* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except with modifications regarding vocational rehabilitation and a Functional Capacity Evaluation.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Commission has jurisdiction over the case. *Page 2 
2. At the time of the injury by accident, an employment relationship existed between plaintiff and defendant-employer.
3. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on August 22, 2000.
4. Plaintiff's average weekly wage, as determined by an I.C. Form 22, is $492.45.
5. Plaintiff has been paid total disability compensation at the appropriate compensation rate from the date of injury to the present.
 * * * * * * * * * * *
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 45 years of age at the time of the hearing before the Deputy Commissioner. He completed the sixth grade. He worked for approximately 19 years as a roofer.
2. Plaintiff's admittedly compensable accident occurred on or about August 22, 2000. Plaintiff was on a ladder stepping up to a roof when the ladder moved and plaintiff fell to the ground.
3. As a result of his injury by accident, plaintiff sustained an injury to his back. Plaintiff was seen at Good Hope Urgent Care in Angier, and was later referred for an MRI. The MRI demonstrated a herniated nucleus pulposus, lateralizing to the left at L5-S1. Plaintiff was subsequently treated with physical therapy and injections by Dr. Gary L. Smoot. After he failed to improve, plaintiff was referred to Dr. James S. Fulghum, III, a neurosurgeon. *Page 3 
4. Dr. Fulghum performed a lumbar hemilaminectomy at L5-S1 on the left with removal of the herniated nucleus pulposus on October 19, 2000. Post-operatively, plaintiff continued to have pain, tingling, and numbness in the left leg. An MRI done on December 15, 2000 showed a combination of scar tissue and recurrent disc material at the L5-S1 level.
5. On February 1, 2001, Dr. Fulghum performed a lumbar laminectomy at L5-S1, with removal of additional disc material, and a posterior lumbar interbody fusion with BAK cage and autogenous right iliac crest, pedicle screw fusion, resulting in a posterolateral fusion at L5 through S1. The fusion healed well and plaintiff improved somewhat. However, he continued to complain of pain and swelling in both legs.
6. At his March 14, 2001 visit to Dr. Fulghum, plaintiff had minimal back pain but had swelling and tenderness in both legs. Dr. Fulghum noted that problems such as deep vein phlebitis needed to be ruled out. Plaintiff was referred to Dr. Waters, who found no evidence of vascular problems. At his April 25 visit, Dr. Fulghum noted that plaintiff's leg swelling had diminished.
7. Plaintiff continued to complain of pain and remained on narcotic medication, including OxyContin, Percocet, and Xanax. As of June 6, 2001, Dr. Fulghum ordered electrodiagnostic studies, which indicated the presence of left S1 radiculopathy. At plaintiff's July 13, 2001 visit, Dr. Fulghum noted that it was possible that over time, plaintiff might improve his strength and function. Dr. Fulghum referred plaintiff to pool therapy and renewed his pain medications. Dr. Fulghum felt at that time that it was too soon to discuss work activity.
8. On October 22, 2001, Dr. Fulghum ordered a lumbar MRI due to plaintiff's continued complaints of pain in his left leg. That MRI, and a subsequent MRI done on April 7, 2002, revealed postoperative changes at L5-S1, a slight bulge at L4-5, and no significant canal or *Page 4 
foraminal stenosis. As of February 2002, Dr. Fulghum opined that plaintiff would never be able to return to his former work and that he was not sure what type of work activity plaintiff would be able to perform. Dr. Fulghum referred plaintiff to Dr. Catherine A. Lawrence for participation in the pain management program at Carolina Back Institute.
9. Plaintiff was initially unable to complete the pain management program because of a myocardial infarction. After clearance from his cardiologist, plaintiff returned to the pain management program on November 11, 2002. The goals of the pain management program were to wean plaintiff from his dependence on narcotic pain medication and to improve his overall level of functioning. The program included a comprehensive medical evaluation, physical therapy, psychological counseling, and vocational counseling. According to Dr. Lawrence, plaintiff was resistant to her efforts to take him off of narcotic pain medication and also resistant to try certain modalities for pain management, such as relaxation, learning about pain pathways, and other ways to reduce pain. Plaintiff was discharged from the program on December 19, 2002.
10. At the time plaintiff was discharged from the pain management program, Dr. Lawrence was of the opinion that plaintiff could return to physical activity with restrictions of no lifting greater than ten pounds, restricted pushing and pulling, no more than 15 minutes of walking at one time, restricted standing, squatting, bending, and kneeling, frequent stretch breaks, and a five minute break every thirty minutes. Dr. Lawrence assigned plaintiff a 30% permanent partial disability rating to his back. She recommended that plaintiff continue with a home exercise program to improve his cardiovascular endurance and strength.
11. The vocational evaluator at the pain management program, Mark Anderson, had only worked with plaintiff for two sessions out of four weeks because of plaintiff's issues *Page 5 
regarding his heart and liver. Mr. Anderson thought plaintiff was motivated to return to work but noted that when plaintiff was released from the pain program, he still needed further vocational services. Plaintiff had worked as a roofer for 19 years but now had significant physical barriers and could not return to that job. Plaintiff had a poor educational background, testing only around the third grade level, and was in need of additional education, such as GED classes.
12. Dr. Lawrence continued to manage plaintiff's treatment for his ongoing pain complaints, primarily with prescription narcotics. According to Dr. Lawrence, since his release from the pain program, plaintiff's condition has not changed and he remains under the same restrictions. Dr. Lawrence is rather vague with regard to the specifics of the restrictions she imposed. For example, plaintiff should not perform the restricted activities "excessively" or for "prolonged periods." A job that required plaintiff to perform bending more than 33% of the time would be outside of plaintiff's restrictions. She did approve, with minor modifications, a work adjustment position for plaintiff at the Salvation Army sorting clothes.
13. Although she assigned plaintiff significant restrictions, Dr. Lawrence is of the opinion that he is not totally and permanently disabled. She could not identify any particular job that he could do, deferring to a vocational specialist in that regard. Although plaintiff's condition has not really changed, Dr. Lawrence is of the opinion that a current Functional Capacity Evaluation (FCE) would be of benefit to clarify what plaintiff is capable of doing.
14. At plaintiff's request, Dr. Craig Derian examined plaintiff on May 13, 2004. Dr. Derian found evidence of disc degeneration at the disc level above plaintiff's fusion and assessed plaintiff with significant restrictions, which would interfere with even sedentary work. In his opinion, plaintiff is not able to engage in any competitive employment, even sedentary work, due *Page 6 
to his inability to sit, stand or walk for any period of time. Dr. Derian believes that an FCE is unnecessary and might worsen plaintiff's condition if something happened during the evaluation.
15. Dr. William F. Lestini examined plaintiff for an evaluation on September 4, 2004. Dr. Lestini had previously seen plaintiff for a comprehensive evaluation on January 25, 2001. Dr. Lestini is of the opinion that plaintiff might improve further by weaning him off of narcotic pain medication, even if that is not plaintiff's preference. Dr. Lestini disagrees with Dr. Derian's assessment that plaintiff is totally disabled, making his assessment of a patient's functional status or employability based upon the patient's "structural impairments, as opposed to pain." Dr. Lestini testified that he would defer to a vocational specialist to make determinations as to whether someone would be employable based upon factors other than the structural capacity of their spine. In his opinion, although an FCE would not likely show plaintiff could do more than stated in Dr. Lawrence's restrictions, such an evaluation would not be contraindicated.
16. According to plaintiff's treating neurosurgeon, Dr. Fulghum, plaintiff has continuing pain problems which require treatment. The only further surgical treatment option might be to try a drug pump implant. Dr. Fulghum does not think plaintiff is a candidate for a dorsicolumn stimulator. Dr. Fulghum opined that plaintiff cannot return to work as a roofer or other vigorous physical labor. As to plaintiff's work capabilities otherwise, Dr. Fulghum did not form an opinion but deferred to rehabilitation professionals and Dr. Lawrence as plaintiff's treating physician.
17. Stephen Carpenter, a vocational counselor, evaluated plaintiff on May 5, 2003. Mr. Carpenter reviewed plaintiff's medical records and took plaintiff's history, which showed that he had only a sixth grade education. Mr. Carpenter administered many different tests, including the Wide Range Achievement Test 3, in which plaintiff scored at the kindergarten *Page 7 
level on reading and word recognition, the first grade level in spelling, and the second grade level in arithmetic, making him functionally illiterate. Testing of memory, concentration and attention showed plaintiff to be below the borderline cutoff, indicating that he may have difficulty understanding detailed and complex work instructions, and carrying out detailed and complex work tasks. Without improvement in these deficient learning areas, plaintiff is not a candidate for post-secondary retraining.
18. Mr. Carpenter considered other tests of plaintiff's mobility and upper extremity range of motion, but plaintiff claimed to be in such pain that he had difficulty maintaining posture or position such that Mr. Carpenter concluded that plaintiff would have difficulty maintaining sedentary or light vocational functions on a sustained basis. He concluded that plaintiff is not capable of returning to work in a competitive manner.
19. After plaintiff was discharged from the pain management program, defendants assigned Hank Graden with Southern Rehabilitation Network, Inc., to provide plaintiff vocational rehabilitation services. Initially, following the recommendation of Mark Anderson, plaintiff pursued assistance for obtaining his GED. Plaintiff went to classes to improve his reading skills, from which he did benefit and improve his reading.
20. Mr. Graden developed several vocational plans for plaintiff, developed a resume and cover letters for his job search, and engaged in a search for suitable employment for plaintiff. While some problems occurred between Mr. Graden and plaintiff, defendants voluntarily assigned Lisa Parker as plaintiff's vocational specialist in lieu Mr. Graden because of plaintiff's complaints.
21. Plaintiff has not cooperated with vocational rehabilitation efforts, including job search, instituted on his behalf and has demonstrated a lack of motivation and desire to return to *Page 8 
work. Plaintiff has demonstrated a consistent pattern of being resistant, passive and oppositional in the rehabilitation process. Plaintiff has failed to contact prospective employers and, when he does make contact, by his own admission, plaintiff presents a negative image by telling employers he is not able to pass a drug screen test or that the lifting would be too heavy without first obtaining specific information about the job. Plaintiff has failed to do any job search on his own, in violation of his Individualized Vocational Rehabilitation Plan and has not filed any job applications, in spite of 131 potential job leads identified. Plaintiff did not give full effort with his vocational evaluation conducted in Raleigh as he attended only one day, which resulted in an inconclusive evaluation. He did not give full effort in the work adjustment position at the Salvation Army.
22. While plaintiff indicates he does not think he can work in any job due to his pain, the evidence does not support the assertion that plaintiff's ability to cooperate with job search efforts has been limited by his pain. His contentions to the contrary are not accepted as credible. Significantly, the evidence establishes he is engaging in physical activities beyond which he contends he can do.
23. Although plaintiff has vocational and physical limitations, the credible lay, medical and vocational evidence does not demonstrate that plaintiff is permanently and totally disabled. The undersigned give greater weight to the opinions of Dr. Lestini and Dr. Lawrence than the opinion of Dr. Derian. Moreover, plaintiff's complaints of pain as they effect his level of physical functioning appear to be somewhat exaggerated.
24. The undersigned also give greater weight to the opinions of Dr. Lestini and Dr. Lawrence on the issue of plaintiff's ability to undergo a functional capacity evaluation than that of Dr. Derian and find that an FCE is appropriate at this time. *Page 9 
25. Plaintiff is in need of continued medical treatment to improve his level of functioning. Plaintiff could also benefit from continued vocational rehabilitation services.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the undersigned concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff is not permanently and totally disabled due to injuries from his August 22, 2000 injury by accident. However, he is entitled to ongoing total compensation for his disability at the rate of $328.32 per week until further Order of the Industrial Commission. N.C Gen. Stat. § 97-29.
2. A reasonable attorney's fee of twenty-five percent of the ongoing benefits being paid to plaintiff is approved for his counsel, Brenton Adams. N.C. Gen. Stat. § 97-90.
3. It is reasonable that plaintiff undergo an FCE. Further, plaintiff is in need of additional medical treatment to wean him off of narcotic pain medication and to otherwise improve his level of physical and mental functioning. It is also reasonable that plaintiff continue reasonable vocational rehabilitation to improve his prospects for obtaining suitable employment. The above treatment is reasonably required to effect a cure or give relief and will tend to lessen the period of disability and plaintiff is obligated to fully and completely cooperate with the above treatment. N.C. Gen. Stat. § 97-2(19).
 * * * * * * * * * * *
Based upon the foregoing Findings of Facts and Conclusions of Law, the undersigned enter the following:
 A W A R D 1. Plaintiff's Motion to Dismiss defendant's appeal is DENIED. *Page 10 
2. Plaintiff's claim to be declared permanently and totally disabled is DENIED.
3. Plaintiff's motion to remove Hank Graden as the vocational rehabilitation specialist assigned to assist him is MOOT and defendant has voluntarily assigned Lisa Parker as his specialist.
4. A reasonable attorney's fee of twenty-five percent of plaintiff's ongoing compensation is approved for his counsel and every fourth check shall be forwarded to his counsel.
5. Defendants shall pay the costs of this action.
 * * * * * * * * * * * O R D E R
1. Plaintiff is HEREBY ORDERED to fully cooperate with medical treatment and vocational rehabilitation services provided on his behalf by defendant, as determined by physicians and vocational rehabilitation specialists as may be designated by defendant, including a functional capacity evaluation. Plaintiff's failure to fully cooperate with such medical treatment and vocational rehabilitation services may result in suspension of his disability compensation, pursuant to N.C. Gen. Stat. § 97.25.
This the 9th day of August 2007.
S/___________________ DIANNE C. SELLERS COMMISSIONER
 CONCURRING: *Page 11 
 S/___________________ BUCK LATTIMORE CHAIRMAN
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1